IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ANTHONY SHANE SCOTT                                                                PLAINTIFF
ADC #117014

V.                              NO.  5:06cv00172 JLH-JWC

TERRI ALLEN                                                                        DEFENDANT

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**Instructions**

The following recommended disposition has been sent to United States District Court Chief Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of these findings and recommendations.  A copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge  (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

    3.    The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Suite A149
    Little Rock, AR  72201-3325

## Recommended Disposition

Plaintiff is a pro se inmate currently confined to the Tucker Unit of the Arkansas Department of Correction ("ADC"). On December 14, 2007, sole remaining Defendant Terri Allen filed a motion for summary judgment, brief in support, and a statement of relevant material facts pursuant to Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas (docket entries #46, #47, #48). Defendant seeks the dismissal of Plaintiff's complaint on the grounds that Plaintiff has failed to state a viable claim of retaliation or racial discrimination. Alternatively, Defendant contends that she is entitled to the protection of qualified immunity. By order entered December 19, 2007 (docket entry #49), Plaintiff was notified of his opportunity to file a responsive pleading opposing Defendant's motion for summary judgment. He was further advised, pursuant to Local Rule 56.1, that if he disagreed with Defendant's statement of facts, he should file a separate, short and concise statement setting forth the facts which he thinks need to be decided at a trial. Plaintiff was clearly warned that his failure to file a statement of facts

would result in the facts in Defendant's statement being admitted. Plaintiff has never responded to the motion.

## I. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999). A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. Celotex, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. Id. at 324; Fed. R. Civ. P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993).

## II. Facts

Plaintiff has failed to respond to the summary judgment motion despite a clear opportunity to do so. The law in this situation is clear. Pursuant to Local Rule 56.1(c) of the Rules of the United States District Court for the Eastern District of Arkansas, all material facts set forth in Defendant's statement of material facts shall be deemed admitted unless controverted by a statement filed by Plaintiff. Although a litigant's verified complaint

is generally considered an affidavit for purposes of summary judgment, Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994), the Court should nevertheless adopt Defendant's recitation of the facts in this instance. See Jackson v. Arkansas Dep't of Educ., Vocational & Technical Educ. Div., 272 F.3d 1020, 1027 (8th Cir. 2001) ("pursuant to Local Rule 56.1(c), [plaintiff] forfeited her ability to contest the facts presented in the Department's original summary judgment motion by her failure to respond to the Department's motion"); see also In re: Bridge Info. Sys., Inc., 297 B.R. 759, 762 n.2 (Bankr. E.D. Mo. 2003) (citing Jackson, 272 F.3d at 1027-28) (same); Washington v. Robinson, 68 F.3d 479 (8th Cir. 1995) (unpub. per curiam) (§ 1983 lawsuit involving excessive force used in connection with arrest dismissed on summary judgment motion; no abuse of discretion where district court deemed facts admitted and granted summary judgment based upon plaintiff's failure to respond to the motion within the time required by the Arkansas local rules).

According to Plaintiff's amended complaint (docket entry #10), on May 15 and 16, 2006, he attempted, unsuccessfully, to use the ADC grievance process. He claims that he gave Sergeant Goins and Defendant Allen Informal Resolution Forms; however, they prevented him from filing an official grievance on the grounds that he had not addressed his complaints through the disciplinary appeal process. Plaintiff further alleges that Defendant Allen told him that disciplinaries are non-grievable matters. Plaintiff contends that his Fourteenth Amendment rights were violated during the disciplinary process. He further claims that he was not grieving the results of the disciplinary; rather, he was grieving the actions of Defendant Allen.

Plaintiff's prison job assignment was PM kitchen dish room worker. He worked from 8:30 a.m. to 5:00 p.m. six days a week. Plaintiff ran the dishwasher. He was to place dirty

inmate food trays on a flat tray holder, fifteen at a time, which would then move through a mechanical dishwasher. Because the dishwasher did not function properly, Plaintiff was required to push the trays with his arm into the unit (elbow deep) until the mechanical arm grabbed the tray holder, and to pull the trays out upon exit. As the trays moved through the dishwasher, Plaintiff alleges his arm was exposed to water temperatures in excess of 190 degrees. On April 27, 2006, Plaintiff's supervisor ordered him and the other dish room workers to soak the food trays in fifty gallon barrels of bleach water for the day. Plaintiff's supervisor inspected the dish room and dismissed Plaintiff and his co-workers for the day. At 2:30 a.m. the following morning an officer woke Plaintiff up and ordered him to the kitchen. Although Plaintiff felt dizzy (which he attributes to the Prozac he had been taking for approximately one month), he made his way to the kitchen and reported to Defendant Allen, the AM supervisor. She wanted to know why there were trays soaking in bleach water. Plaintiff explained that the PM supervisor had ordered it. Defendant Allen directed Plaintiff to run the trays through the dishwasher. He declined because he felt that the side-effects from his medication compromised his safety in running the machine, which, previously described, exposed him to very high temperatures of water. Plaintiff returned to his barracks and went back to sleep. Defendant Allen wrote Plaintiff a major disciplinary.

By way of background, Plaintiff claims that he is an Act 309 inmate (inmate trustee). In late 2005, he participated in an investigation that involved the abuse (apparently sexual and otherwise) of 309 inmates in Lonoke County and led to the arrest of several officials. Plaintiff contends that Defendant Allen questioned him and made negative comments to him about the Lonoke investigation (she had been implicated by Plaintiff in two letters he wrote officials concerning officer misconduct). In addition, on April 27, 2006, one of

Plaintiff's inmate co-workers began telling others that Defendant Allen had made several sexually inappropriate comments to him during the AM kitchen shift. Plaintiff says he directed this inmate to the sexual abuse hotline and urged him to call and report Defendant Allen. Plaintiff contends the major disciplinary was written in retaliation for this particular incident, because of Plaintiff's race,[1] and because he had previously reported Defendant Allen and other officials' misconduct to the authorities. Plaintiff further contends that Defendant Allen falsified several statements in connection with the disciplinary she issued him, thus depriving him of a fair hearing. For the reasons that follow, Defendant Allen's motion should be granted.

### III. Analysis

**A.     Retaliatory Disciplinary**

Plaintiff refused Defendant Allen's orders to remove the trays soaking in bleach water and to run them through the dishwasher. Instead, he returned to his barracks and went back to sleep. In response, Defendant Allen wrote Plaintiff a major disciplinary. As stated above, Plaintiff contends this disciplinary was written in retaliation for the April 27, 2006, incident,[2] because of his race, and for previously reporting Defendant Allen and other officials' misconduct to the authorities— i.e. participating in the "Lonoke sex scandal." Plaintiff further contends that Defendant Allen falsified several statements in connection with the disciplinary she issued him, thus depriving him of a fair hearing.

---

[1] Plaintiff alleges Defendant Allen had made a comment about his race (white).

[2] The incident in which one of Plaintiff's inmate co-workers told others that Defendant Allen had made several sexually inappropriate comments to him during the AM kitchen shift and Plaintiff had directed this inmate to the sexual abuse hotline and urged him to call and report Defendant Allen.

This circuit has for years recognized the existence of a claim for retaliatory discipline pursuant to § 1983 where a prison official files disciplinary charges in retaliation for the inmate's exercise of his constitutional rights. Farver v. Schwartz, 255 F.3d 473, 474 (8th Cir. 2001) (per curiam) (prisoner stated §1983 claim against prison officials by alleging that corrections officer commenced false disciplinary charges against him for filing grievances against officer); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing of false disciplinary charge against inmate is actionable under § 1983 if done in retaliation for inmate's having filed grievance pursuant to established procedures because such retaliation interferes with inmate's access to grievance procedure).

Plaintiff's claim of retaliation will fail, however, if the alleged disciplinary violation was issued for the actual violation of the prison rule. Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994); see also Cowans v. Warren, 150 F.3d 910, 912 (8th Cir. 1998) (per curiam) (a retaliation claim is precluded if the disciplinary punishment was imposed based on a finding that the inmate actually violated a prison regulation). Thus, Plaintiff's claim fails if Defendant can successfully demonstrate "some evidence" in support of her decision to discipline Plaintiff. Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2001) ("the overreaching due process concern is whether 'some evidence' supports the disciplinary decision"); Goff v. Burton, 91 F.3d 1188, 1191 (8th Cir. 1996). This "some evidence" rule allows the federal courts to defer to the judgment of prison officials in maintaining discipline in their institutions while meeting constitutional requirements. Hill, 472 U.S. at 455-56. The limited review by federal courts does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Id. at 455. Even the fact that an

inmate may be innocent of the charges does not raise a due process issue; all that is constitutionally required is "due process, not error-free decision-making." Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994) (internal citation omitted). Furthermore, a witnessing officer's violation report, standing alone, constitutes "some evidence." Hill, 472 U.S. at 456; Hartsfield v. Nichols, No. 06-3450 (8th Cir. Jan. 8, 2008) (disciplinary violations were sufficiently supported by some evidence; a correction officer's report, even if standing alone and disputed, suffices as some evidence on a disputed fact when it is found credible in an impartial hearing); Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam) ("One officer's testimony was sufficient to constitute some evidence"; plaintiff's admission was "some evidence" of actual rule violation) (citing Brown v. Frey, 807 F.2d 1407, 1414 (8th Cir. 1986)); Rudd v. Sargent, 866 F.2d 260, 262 (8th Cir. 1989) (per curiam) ("Due process requirements are satisfied if some evidence–that is, any evidence in the record–supports the disciplinary decision") (citing Hill, 472 U.S. at 455-56; Freitas v. Auger, 837 F.2d 806, 810 (8th Cir. 1988)). Prison officials thus can rely on conduct violation reports to find inmates guilty of disciplinary infractions. Rudd, 866 F.2d at 262.

According to Defendant's evidence (see docket entries #46, #47, #48), Plaintiff refused to obey Defendant Allen's direct order to wash dishes, and an altercation between the two ensued. Plaintiff stated in his deposition testimony that he knew that, as an inmate, he was required to follow the orders given by corrections staff. Plaintiff openly admits in both his amended complaint and his deposition testimony that he was given a direct order by Defendant Allen that he violated. Because the disciplinary charges filed against Plaintiff were for the actual violation of a prison regulation, Defendant contends that Plaintiff cannot state a viable claim for retaliation.

On April 28, 2006, Defendant Allen charged Plaintiff with failure to obey a direct order, insolence to a staff member, and creating unnecessary noise. Whether or not Plaintiff could present a viable justification in defense of his refusal to follow that order was a matter for the disciplinary court's consideration. Plaintiff's allegations concerning faulty machinery and excessive water temperatures notwithstanding, he has admitted that he never filed a grievance or ever complained to a supervisor regarding the working conditions in the dish room; thus, any claim for deliberate indifference to his safety is moot. Additionally, Plaintiff admitted he had never previously claimed any ill effects from his medication, and returned to his barracks to sleep rather than seeking medical attention immediately upon leaving the kitchen on the morning in question. The disciplinary hearing officer that presided over Plaintiff's hearing was provided with the disciplinary violation form issued by Defendant Allen. Plaintiff appeared at the hearing and was allowed to make a statement on his own behalf. He was also permitted to identify witnesses who he wanted to write witness statements for the hearing officer's deliberation. Statements from the three individuals requested by Plaintiff were taken into consideration by the hearing officer and after evaluating the veracity of the evidence presented, the hearing officer adopted the report submitted by the charging officer and found Plaintiff guilty of all three charges. None of those convictions were overturned on appeal. Thus, there is "some evidence" to support Defendant Allen's decision to file the charges and Plaintiff's retaliation claim necessarily fails.

**B.    Equal Protection**

Prisoners are protected under the Fourteenth Amendment from invidious discrimination based on race. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). The Equal

Protection Clause generally requires the government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "Dissimilar treatment of dissimilarly situated persons" does not violate the Equal Protection Clause. Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) (gender discrimination). The first step in evaluating an equal protection claim, therefore, is determining whether Plaintiff has demonstrated that he was treated differently than others who were similarly situated to him, simply because he is white. Arnold v. City of Columbia, Missouri, 197 F.3d 1217, 1220 (8th Cir. 1999) (city employee pay classification scheme); Keevan v. Smith, 100 F.3d 644, 647-48 (8th Cir. 1996) (gender discrimination); Klinger, 31 F.3d at 731. This is a threshold question. Id. Next, Plaintiff bears the burden of proving, by direct or circumstantial evidence, that discriminatory intent was the motivating factor for the differentiation in treatment. See Vill. of Arlington Heights v. Metropo. Hous. Dev. Corp., 429 U.S. 252, 265 (1977) ("proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"); Washington v. Davis, 426 U.S. 229, 240 (1976). Once Plaintiff establishes a prima facie case of racial discrimination, the burden shifts to Defendant to prove her actions were not motivated by race. Washington, 426 U.S. at 241.

When analyzed, Plaintiff's claim fails at the first step. As observed in Klinger, "Absent a threshold showing that [plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." Klinger, 31 F.3d at 731. In support of his equal protection allegation Plaintiff has presented nothing more than a broad, conclusory allegation that his race was a motivating factor in the disciplinary issued to him by Defendant Allen. The only mention of race in his amended complaint is that Defendant Allen referred to him as "white boy" and that this

somehow violated his equal protection rights. Plaintiff offers no facts in support of a claim that Defendant Allen treated him differently than any other inmate on the basis of his race.[3] His conclusory allegation, standing alone, is simply insufficient to state an equal protection claim against Defendant Allen.

Since dismissal is appropriate on retaliation, deliberate indifference, and equal protection grounds, the Court need not address Defendant's qualified immunity argument.

### IV. Conclusion

In accordance with the above, IT IS THEREFORE RECOMMENDED that:

1. Defendant's motion for summary judgment (docket entry #46) should be GRANTED and Plaintiff's case should be DISMISSED in its entirety.

2. Any pending motions should be DENIED AS MOOT.

3. The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any order adopting this recommendation, and any judgment entered thereunder, would not be taken in good faith.

4. The evidentiary hearing set for February 12, 2008, will be cancelled by separate order.

DATED this 24th day of January, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] Defendant admits that one other inmate also failed to obey her order to wash dishes. That inmate was not written a disciplinary because he had not been a part of the dish room shift the previous evening. Because he was not one of the inmates responsible for leaving the dishes soaking in a bleach mixture, Defendant Allen allowed the inmate to return to his barracks.